UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOSEPH CLARK,                )
                             )
    Plaintiff,               )
                             )
    vs.                      )   Case No. 04-1012
                             )   **FILED**
JOSEPHINA TORREZ, et al.,    )
    Defendants.              )   JUN 3 0 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**PLAINTIFF'S EMERGENCY DUAL-MOTION FOR APPOINTMENT OF COUNSEL AND EXTENSION OF TIME IN WHICH TO CONDUCT AND COMPLETE DISCOVERY OR, ALTERNATIVELY, FOR A COURT-ORDER FOR THE PLAINTIFF TO BE GIVEN ACCESS TO USE THE PRISON LAW LIBRARY CELL AND AN EXTENSION OF TIME IN WHICH TO CONDUCT AND COMPLETE DISCOVERY; AND FOR A PRELIMINARY INJUNCTION**

NOW COMES THE PLAINTIFF, Joe Clark, pro se, and respectfully move this Court for appointment of counsel to represent the Plaintiff in the above-captioned case, to ensure that the Plaintiff receives adequate and meaningful access to The Courts, and for an extension of time in which to conduct and complete discovery or, alternatively, for a court-order for the Plaintiff to be given access to use the prison Law Library cell and the legal material/information therein and an extension of time in which to conduct and complete Discovery; and for a preliminary injunction. In support of this dual-motion, the Plaintiff states as follows:

### I. Appointment Of Counsel or Court-Order, And Extension Of Time

(1) The Plaintiff has been, and still is, continuously confined at his present location (I-gallery, cell #12, North Cellhouse, Pontiac Correctional Center) since January 12, 2005.

(2) Due to unprofessional, retaliatory and unlawful actions of certain prison officials/staff, the Plaintiff has necessarily had to file institutional grievances and make administrative complaints, and some of these said prison officials/staff are assigned to work on I-gallery on a daily basis where the Plaintiff is confined/located; and these very same prison officials/staff have control of Plaintiff's movements/whereabouts, and whether or not the Plaintiff goes on scheduled call-passes or any other appointments or movements (such as to the Law Library cell) outside of the Plaintiff's assigned cell of residence.

(3) Throughout the time period that the Plaintiff has been residing at his present location (I-gallery, North Cellhouse), and even now, the Plaintiff was, and still is, approved and authorized by the legal staff over at the main Law Library to have access to and utilize the cellhouse law library cell and the legal material/information therein. However, because the Plaintiff necessarily filed the above-mentioned institutional grievances and administrative complaints against the above-mentioned prison officials/staff, the above-mentioned officials/staff continuously retaliates against the Plaintiff in several ways, and one of the ways that these officials/staff have taken to retaliate against the Plaintiff is to spitefully and effectively deny/refuse the Plaintiff access to the Law Library cell and the legal material/information therein.

(4) Ever since the Plaintiff has been residing on I-gallery, North Cellhouse (since January 12, 2005) up until now, the Plaintiff has only been given access to use the Law Library cell one (1) time, which was just recently on June 05, 2005, and only for a two (2) hour time period; and the only reason why the Plaintiff was able to gain access to the Law Library cell that one day (June 05, 2005) was because an officer (officer J. Brockett, badge #2924), who is *not* one of the above-mentioned officials/staff who participate in retaliating against Plaintiff and harassing Plaintiff because of the grievances and administrative complaints filed by Plaintiff, worked on I-gallery, North Cellhouse, where the Plaintiff resides, on that date (June 05, 2005), and he (officer J. Brockett) took Plaintiff to the cellhouse Law Library cell.

①

⑤ The Plaintiff has filed several institutional grievance complaints concerning the staff denying Plaintiff access to the Law Library cell, but when the counselor questions these above-mentioned officials/staff regarding Plaintiff's grievances, the officials/staff are constantly and blatantly dishonest and tell lies and make false documentations in the cellhouse logbooks/records; and the officials/staff's mere denial of the facts asserted in the Plaintiff's grievances are accepted by the grievance "committee" (which is mostly biased) without any type of further investigating or looking into. The grievance process/procedure is literally futile and of no use as a remedy to this problem.

⑥ The legal Library staff at Plaintiff's place of confinement (Pontiac) does **not** provide any legal help or assistance (not from any paralegal, any law clerk or anyone else) to the Plaintiff or any other similarly situated prisoner unless he is totally illiterate or does not speak any english.

⑦ The administration at Plaintiff's present place of confinement (Pontiac Corr. Center) has a so-called "noise-level policy" (which is arbitrarily and unconstitutionally abusive and manipulated against the Plaintiff and other similarly situated prisoners by the prison administration/staff on a daily basis) which discourages any other would-be knowledgeable prisoner from helping or assisting the Plaintiff in his legal pursuits/matters, and which "chills" any legitimate interests of the prisoners who might be willing and able to share/discuss pertinent legal information, due to the real and actual threat (and actual imposition) of punishments/disciplinary sanctions against the prisoners by the prison administration/staff.

⑧ In its CASE MANAGEMENT TXT ORDER, dated 5/26/05, this Court ordered that the parties shall abide by the scheduling deadlines set by this Court in its 5/26/05 Case Management TXT Order, and ordered that "all discovery must be completed on or before Friday, July 29, 2005." The Plaintiff has never reached or been through the discovery stage/process in any civil legal matter before, and the discovery stage/process is new to the Plaintiff; and therefor, when the Plaintiff was able to make it to the prison Law Library cell on June 05, 2005 (as mentioned above, in #4), the Plaintiff put forth all endeavors and efforts in an attempt to gather and copy down all of the pertinent legal information pertaining to discovery (rules #30, #31, #32, #33, #34 and #36 of the Federal Rules Of Civil Procedure) so that the Plaintiff could study and utilize for his discovery purposes in this above-captioned case. However, the two-hour time period which the Plaintiff was allowed in the Law Library cell was simply inadequate/insufficient and not enough time for Plaintiff to gather this pertinent information which is crucial to the Plaintiff's case. So the Plaintiff requested for additional time to use the Law Library cell (which is allowable/permissible according to the institution's rules), both in advance from the legal staff over at the main Law Library and on June 05, 2005 from the cellhouse security-staff, but the Plaintiff's requests were not honored; and on the following day (June 06, 2005), and on June 12, 2005, the above-mentioned gallery officers assigned to work 1-gallery refused to allow Plaintiff access to use the Law Library cell, despite the fact that they knew of the Plaintiff's court-ordered deadline. So the Plaintiff then wrote a couple of fully detailed letters to paralegal assistant Paula G. Rich over at the main Law Library, explaining everything to her, and explaining to her that the Plaintiff had made all reasonable efforts to obtain the necessary legal information which the Plaintiff needed, and that the Plaintiff did not have enough/sufficient time in the Law Library cell to gather or copy down or study such pertinent legal information, and that the Plaintiff had requested additional time to utilize the Law Library cell but that the request was denied, and that certain officers/staff was denying Plaintiff access to the Law Library cell, and asked her (paralegal assistant Paula G. Rich) if she would send me the pertinent legal information which I (Plaintiff) need (six specific rules of the Fed. Rules Of Fed. Civ. Proc. — rules #30, #31, #32, #33, #34 and #36), due to these circumstances and also due to Plaintiff's court-ordered deadline, but instead of providing Plaintiff with this requested legal information, P.A. Paula G. Rich sent the Plaintiff a brief letter/message indicating that she is **not** going to send this requested legal information to the Plaintiff.

⑨ The above-mentioned officials/staff continues to refuse to allow Plaintiff access to use the Law Library cell.

⑩ While being subjected to these retaliatory and unconstitutional acts of these prison officials/staff, significant and precious time ("dead" time) has passed/elapsed, and still is passing/elapsing, and the Plaintiff definately is **not** going to be able to meet this Court's July 29, 2005 deadline to complete discovery.

⑪ When the Plaintiff originally filed his initial Motion For The Appointment Of Counsel in this above-captioned case this Court denied Plaintiff's motion, and in denying said motion, this Court asserted that it (this Court) grants pro se litigants, such as the Plaintiff in this above-captioned legal matter, wide latitude in the handling of their lawsuits. But what latitude? Where is the latitude? Any such latitude that might have initially been granted to the Plaintiff in this above-captioned case has since been reduced/diminished by the actions/conduct of these spiteful, retaliating prison officials/staff.

⑫ The above-mentioned conduct by these prison officials/staff are a great hinderance to the Plaintiff's legal pursuits, and a serious

frustration to the Plaintiff's legal endeavors, and constructively & effectively denies Plaintiff adequate and meaningful access to The Courts; and the appointment of counsel to represent the Plaintiff in this above-captioned case, or a court-order compelling the above-mentioned prison officials/staff to stop retaliating against the Plaintiff and to give/allow Plaintiff access to the prison Law Library, is necessary in order to ensure that the Plaintiff receives fair representation of his claims and received adequate and meaningful access to The Courts; and due to the passed/elapsed time, an extension of time in which to conduct and complete discovery in this above-captioned case is necessary in order to ensure that the Plaintiff is afforded sufficient time in which to conduct and complete discovery in a timely manner and abide by the scheduling deadlines set by this Court in its 5/26/05 CASE MANAGEMENT TXT ORDER.

## II. Preliminary Injunction Pursuant To 735 ILCS 5/11-102

** Be it remembered that the actual legislative intent and purpose of Public Act 91-912, House Bill 4124, § 3-6-2(f), is intended for a person committed to the Illinois Department Of Corrections who becomes in need of and requires immediate medical or dental care and treatment at a place other than the institution or facility (such as outside hospitals, clinics, or other medical facilities outside of and independent of the institution or Department) not for prison populations in general or as a whole (and the legislative language of Public Act 91-912, enacted as House Bill 4124, § 3-6-2(f), is clear and unambiguous on this point); and that governor George H. Ryan approved and signed this legislation (Public Act 91-912, enacted as House Bill 4124) on July 07, 2000, but that this legislation has been inappropriately and inconsistently ascribed/adopted and implemented by the Pontiac Corr. Center (Plaintiff's present place of confinement) through Warden's Bulletin No. 80, dated September 27, 2000, which is attached to Plaintiff's originally filed complaint at Plaintiff's Exhibit-B. **

The defendants' official practice and policy of their two-dollar ($2.00) co-payment, which is the inappropriate and inconsistent spin-off scheme/implementation of House Bill 4124 § 3-6-2(f), by the defendants as mentioned above, has been, and still is being, fraudulently and unconstitutionally used to obtain money from the Plaintiff (and numerous other prisoners similarly situated) without providing necessary medical care in return, and to flat-out deny necessary medical care/treatment for Plaintiff's (and other prisoners) serious medical needs, by the defendants as described in the following chronological order of events:

① Fraudulently

a. After the Plaintiff completed a nineteen (19) day hunger-strike the Plaintiff suffered severe, painful physical complications/ailments which needed medical attention/care, and the Plaintiff brought this matter to the attention of medical technician Beal, and on March 12, 2004 medical technician Beal accepted a signed P-96 form (for a $2.00 medical co-payment charge) from the Plaintiff and told the Plaintiff that he (med. tech. Beal) was going to sign Plaintiff up for the next sick-call to be seen by the doctor to receive the necessary medical attention/care. However, the Plaintiff never received any kind of medical attention/care for the above-mentioned medical need, and was left to endure the excruciating, severe agony of the pain until the Plaintiff's medical condition and pain eventually abated on its own. Plaintiff never did get placed on sick-call, and did not see any doctor, as medical technician Beal said he was going to do. Instead, on March 16, 2004, med. tech. Beal sent the Plaintiff a receipt of the P-96 form which the Plaintiff had given to him (med. tech. Beal) on March 12, 2004, which indicated that the Plaintiff had been charged two-dollars ($2.00) for medical attention/care which he (Plaintiff) never received.

b. The Plaintiff was charged two-dollars ($2.00) for a dental cleaning on May 28, 2004, but the oral hygienist did **not** floss the Plaintiff's teeth, nor did she polish the Plaintiff's teeth, which is a required aspect/procedure of the professional teeth-cleaning process. But on June 02, 2005 the Dental department sent the Plaintiff a receipt of the P-96 form from May 28, 2005, indicating that the Plaintiff was charged $2.00 by the oral hygienist, as if she (the oral hygienist) had provided/performed an actual, complete, real dental cleaning upon the Plaintiff on May 28, 2005.

③

c. On December 28, 2004 the Plaintiff went to sick-call to be seen by the doctor (Dr. Vade) for medical attention for an unfamiliar/foreign, painful, itching sore/spot on Plaintiff's right leg; but when the Plaintiff arrived at sick-call on December 28, 2005 the doctor (Dr. S. Vade) acted indifferent about the spot/blemish on Plaintiff's leg, and did **not** give the Plaintiff anything for the spot/blemish and would not even tell or inform the Plaintiff what the sore/spot/blemish is, but merely asked Plaintiff "is it a birthmark?", and just rushed the Plaintiff out of the room without providing any kind of medical care/treatment or even informing the Plaintiff of what the sore/spot/blemish is or what should be done to it or about it. Then on December 30, 2004 the Plaintiff received from the medical staff a receipt of the P-96 form indicating that the Plaintiff had been charged for medical care/services which was never provided and which was never received.

d. The Plaintiff has been diagnosed by the podiatrist (foot specialist), and also by the physician, as having a medical condition (a foot deformity) in both feet, and the podiatrist, several physicians, the Director Of Nursing, and the Medical Director, have prescribed and approved certain medical footwear for his (Plaintiff's) medical condition in his feet. However, prison staff (both regular staff and medical staff) have conspired and contrived to spitefully withhold Plaintiff's medically prescribed footwear from him, causing the Plaintiff to suffer the pain (and injuries) resulting from the lack of the medically prescribed footwear, and when the Plaintiff seeks something from the staff to relieve the daily pain (something such as the medically prescribed footwear itself, or some Motrin or other pain-killer) the staff fraudulently attempts to use the $2.00 co-payment scheme to get the Plaintiff to constantly pay them (staff) two-dollars for the pain & injury which they (staff) are intentionally and spitefully causing.

e. The prison staff also purposefully and conspiratorily creates/causes situations or environmental circumstances (such as deliberately opening the windows wide open, which are situated directly in front of the shower, in the winter-time, in below-zero weather, on shower days while us prisoners are taking showers) which causes sickness/illness, and then fraudulently making the Plaintiff and other prisoners pay money in order to get a remedial medicine or antidote for the sickness/illness which they themselves (staff) cause.

f. These fraudulent instances and actions by the prison staff are **not** mere isolated incidents which occur to the Plaintiff only; there are numerous other prisoners who are similarly situated who have been, and still are, subjected to these forms of fraudulent and unethical practices of prison staff, and these are continuous, ongoing, official practices of prison staff at Plaintiff's present place of confinement.

② <u>Unconstitutionally and Unlawfully</u>

g. On February 01, 2005 the Plaintiff had an encounter/altercation with the extraction team, whereby Plaintiff sustained several painful injuries including, but not limited to, sprained wrists, cuts and bruises (which, sometime later in the month, was diagnosed/prescribed by the doctor as needing treatment/medication); and on February 02, 2005, the day following the encounter/altercation mentioned above, medical technician Douglas Brown flat-out refused to give or provide the Plaintiff with any medical attention or care whatsoever for the above-mentioned injuries, and refused to refer the Plaintiff to see a doctor or other medical staff member, due to the fact that the Plaintiff did **not** have a P-96 form at the time to give him (med. tech. D. Brown).

h. As stated above in letter d, prison staff have conspiratorily and spitefully confiscated Plaintiff's medically prescribed footwear and refuses to return the medically prescribed footwear back to the Plaintiff, and therefor, the Plaintiff constantly suffers severe pain (and injury) on a daily basis. So on June 06, 2005 the Plaintiff fully explained this whole situation to medical technician J. Birkel and asked him (J. Birkel) if he would either provide me (Plaintiff) with some more medical footwear or at least give/provide me (Plaintiff) with something for pain relief until Plaintiff could possibly have something done about the wrongful denial of the medical footwear, but medical technician J. Birkel refused to provide the Plaintiff any type of medical attention, care or treatment whatsoever due to the fact that the Plaintiff did **not** have a P-96 form at the time because the cellhouse staff claimed that they didn't have any P-96's in the cellhouse.

i. On the morning of June 25, 2005 the Plaintiff spoke with medical technician M. MacBeth about the situation with Plaintiff's medically prescribed footwear (which she was already aware of), and asked her (med. tech. M. MacBeth) to give Plaintiff for the constant, everyday pain in Plaintiff's feet, but because the Plaintiff was unable to obtain a P-96 form and didn't have one to give to her, she (M. MacBeth) refused to give Plaintiff anything for the pain of his medical condition and refused to do anything about Plaintiff's medical need.

j. The defendants' two-dollar ($2.00) co-payment practice/policy, which is contrary to and does not reflect the true legislative intent & purpose of Public Act 91-912, enacted as House Bill 4124, §3-6-2(f), only fosters and provides continuous opportunity for the defendants to be deliberately

④

indifferent to the Plaintiff's serious medical needs, which is unconstitutional; and this is unconstitutional practice by the defendants is ongoing and continuous, and the Plaintiff (as well as other similarly situated prisoners/persons) will continue to be subjected to such unconstitutional practices of the defendants if this Court does not intervene.

k. The Plaintiff has already filed grievances concerning these matters, but to no avail as the grievance committee and process is biased, unreliable, and basically useless and futile.

l. Moreover, not only is the defendants' current two-dollar co-payment practice/policy unconstitutional and fails to reflect the legislative intent and purpose of House Bill 4124, § 3-6-2(f), but it is also contrary to and violative of the defendants' own version/enactment of House Bill 4124, which is their (defendants') Warden's Bulletin No. 80, dated September 27, 2000, which is attached to Plaintiff's originally filed complaint at Plaintiff's Exhibit-B.

m. And furthermore, the above-mentioned actions of the defendants is also contrary to and violates clearly established State law, codified at 745 ILCS 10/4-105: Medical Care of Prisoner - Failure To Provide.

n. The Plaintiff, and other persons similarly situated, will continue to suffer injury and violations of Constitutional magnitude without the intervention of this Court, and therefore, a Preliminary Injunction pursuant to 735 ILCS 5/11-102, enjoining the defendants from continuing the practice of their two-dollar co-payment scheme, from this Court, is necessary in order to prevent any such future Constitutional violations from continuing to occur.

③ **Criterion Met**

a. **Irrepairable Injury** — There is no adequate remedy at law (administratively), and future compensation in damages will be insufficient remedy, and Plaintiff's injuries are now actual and of serious consequences to the Plaintiff.

b. **Balancing Of The Interests** — That if the Plaintiff is denied the relief he seeks, and if this Court does not intervene, he will suffer more from the defendants, which could be even more serious and could actually be fatal. The Plaintiff will continue to suffer great harm/injury and prejudice if the relief is not granted, but the Defendants will **not** suffer any harm/injury or prejudice if the relief is granted. The Plaintiff is presently in segregation, and being in segregation in contrast to being in the general population is very restrictive, and generally reduces and limits Plaintiff's movements and limits Plaintiff's access to the Law Library and having access to The Courts.

c. **Public Interest** — It is always in the public's interest that government officials act in a lawful manner. The Defendants have violated their own rules and regulations and the Laws and the mandates of the Constitution. The intent of the government in passing its laws and requiring prison officials to comply with the laws is a public interest aspect, which cannot be ignored.

d. **Likelihood Of Success On The Merits** — The Plaintiff has shown that the above (a, b, and c) are in strong favor of granting Injunctive Relief. The Plaintiff's likelihood of winning a final judgement on the issues presented in his above-captioned case (in his Civil Rights lawsuit, Joseph Clark vs. Josephine Torrez, et al., Case No. 04-1012) is overwhelming.

Wherefor, for **all** of the above reasons, the Plaintiff respectfully move this Court to appoint counsel to represent the Plaintiff in the above-captioned legal matter, to insure that the Plaintiff receives fair representation of his claims and adequate, meaningful access to The Courts, and for an extension of time in which to conduct and complete Discovery or, alternatively, for a Court-order for the Plaintiff to be given access to use the prison Law Library cell and an extension of time within which to conduct and complete Discovery; and for an order of Preliminary Injunction enjoining the Defendants from continuing in their unconstitutional, fraudulent and unlawful two-dollar ($2.00) co-payment practice/scheme.

Sincerely & Respectfully Submitted,
Joe Clark
Plaintiff, pro se

Joe Clark
#K57170, North House-112
700 West Lincoln Street
P.O. Box-99
Pontiac, Illinois 61764

Dated: June 26, 2005

⑤

IN THE
<u>UNITED STATES DISTRICT COURT</u>
<u>CENTRAL DISTRICT OF ILLINOIS</u>

<u>Joseph Clark,</u> )
Plaintiff, )
)
) Case No. <u>04-1012</u>
v. )
)
<u>Josephina Torrez, et al.,</u> )
Defendants.

## PROOF/CERTIFICATE OF SERVICE

TO: <u>John M. Waters, clerk</u>         TO:
<u>Clerk Of The United States District Court</u>
<u>Central District Of Illinois, Peoria Division</u>      <u>John J. Weathers</u>
<u>Office Of The Clerk, Room 309</u>         <u>Assistant Attorney General</u>
<u>Federal Building, 100 N.E. Monroe Street</u>         <u>500 South Second Street</u>
<u>Peoria, Illinois 61602</u>         <u>Springfield, Illinois 62706</u>
(the original and three(3) copies sent)        (one(1) copy sent)

PLEASE TAKE NOTICE that on <u>June 27</u>, 20<u>05</u>, I have placed the documents listed below in the institutional mail at <u>Pontiac</u> Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service: <u>my Cover Letter to the Clerk Of The Court; this Proof/ Certificate Of Service; and my Plaintiff's Emergency Dual-Motion For Appointment Of Counsel And Extension Of Time In Which To Conduct And Complete Discovery Or, Alternatively, For A Court-Order For The Plaintiff To Be Given Access To Use The Prison Law Library Cell And An Extension Of Time In Which To Conduct And Complete Discovery; And For A Preliminary Injunction</u>.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: <u>June 26, 2005</u>        /s/ <u>Joseph Clark</u>
       NAME: <u>Joseph Clark</u>
       IDOC#: <u>#K57170</u>
       <u>Pontiac</u> Correctional Center
       P.O. BOX- <u>99</u>
       <u>Pontiac</u>, IL. <u>61764</u>

Revised Feb 2002

June 26, 2005

Dear Clerk Waters,

this is Mr. Joseph Clark, and I am the Plaintiff in the enclosed-captioned case, which is currently pending in this Court. Enclosed you will find the original and three (3) copies of my Plaintiff's Emergency Dual-Motion For Appointment Of Counsel And Extension Of Time In Which To Conduct And Complete Discovery Or, Alternatively, For A Court-Order For The Plaintiff To Be Given Access To Use The Prison Law Library Cell And An Extension Of Time In Which To Conduct And Complete Discovery; And For A Preliminary Injunction, and the attached related Proof/Certificate Of Service.

The original and two (2) of the copies is for you to file with The Court, and the additional copy is for you to stamp-file and return back to me for my own file/references. *Also, be advised that counsel for the Defendants have also been served with a complete copy of all of these enclosed papers/pleadings, as is indicated in the enclosed Proof/Certificate Of Service.

So I ask that you file the enclosed original and two (2) of the copies of my pleadings with The Court, and that you stamp-file the additional copy and return it back to me for my own file/references, at your very earliest convenience. Thank you for your cooperation and your help.

Sincerely,
Joseph Clark
Plaintiff, pro se

Joseph Clark
#K57170, NorthHouse-112
700 West Lincoln Street
P.O. Box-99
Pontiac, Illinois 61764