E-FILED
Wednesday, 09 November, 2005 01:31:31 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

FILED
NOV - 9 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOSEPH CLARK, )
 )
    Plaintiff, )
 )
vs. ) No. 04-1012
 )
JOSEPHINA TORREZ, )
 )
    Defendants. )

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

NOW COMES Plaintiff, JOSEPH CLARK, pro se, in response to the Defendants' motion for Summary judgment pursuant to Federal Rules of Civil Procedure Rule 56(b), and respectfully moves this Court to deny the Defendant's motion for summary judgment. In support hereof, the Plaintiff states as follows:

### INTRODUCTION

The Plaintiff, Joseph Clark, brings this suit pursuant to 42 U.S.C. 1983 for the violations of his Constitutional rights on September 29, 2005 when the Defendant was deliberately indifferent to the Plaintiff's serious medical needs by not providing Plaintiff with any necessary medical care/treatment at all, and by not allowing the Plaintiff to see a doctor or other medical staff member. The defendant has filed a motion for Summary Judgment pursuant to Federal Rules of Civil Procedure Rule 56(b), claiming that the Plaintiff did not show that he had a serious medical need on the date in question (September 29, 2005).

### DISPUTED GENUINE ISSUES OF MATERIAL FACTS

1. The Plaintiff has **not** had 'various' medical tests performed on him for his random chest pains, but only a couple of EKGs. (*See attached Document-B, and plaintiff's Oral Deposition, pp. 11-12.)

2. Whether or not the Plaintiff has actually been diagnosed with any heart/chest condition. (*See attached Document-C, and plaintiff's Oral Deposition, pp. 13-14.)

3. That the Plaintiff did indeed show/exhibit external symptoms of his medical condition on the morning of September 29, 2002, the date of the incident in question. (*See attached Document-D, and plaintiff's Oral Deposition, pp. 20-21, p. 18, p. 26, pp. 30-31, and Defendant Torrez's Answer, page 2, numbers 4, 5 and 6, and plaintiffs Oral Deposition, p.10, lines 2-18.)

4. Whether, for purposes of prospective injunctive relief, in conjunction with Plaintiffs Motion For Preliminary Injunction submitted to this Court on June 27, 2005, there is "a contemporary violation of a nature likely to continue," and whether the Defendant-Officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so, and a continuance of that disregard during the remainder of the litigation and into the future. (*See attached Documents- E and F.)

①

## APPLICABLE LAW AND ARGUMENT

I. Standard for summary judgment.

Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In making this determination, the Court is to view all facts and draw all inferences from the record in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The plaintiff must come forward with evidence that would reasonably permit the finder of fact to find in favor of the Plaintiff on a material question; otherwise, the Court must enter summary judgment against the plaintiff. Waldridge v. American Hoechst Corp., 24 F. 3d 918, 920 (7th Cir. 1994); International Union of Operating Engineers v. Associated General Contractors, 845 F. 2d 704, 708 (7th Cir. 1988). Once the nonmoving party shows that there is evidence in favor of the nonmoving party on an issue which the nonmoving party has the burden of proof, summary judgment is defeated. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Brazinski v. Amoco Petroleum Additives Co., 6 F. 3d 1176, 1183 (7th Cir. 1993).

Additionally, the United States Supreme Court in Farmer v. Brennan, 114 S. Ct. at *1974, established that the use of a subjective test "will not foreclose prospective injunctive relief, nor require a prisoner to suffer physical injury before obtaining [511 U.S. 827] prospective relief." The subjective test adopted today is consistent with the principle that "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief." Pennsylvania v. West Virginia, 262 U.S. 553, 43 S. Ct. 658, 67 L. Ed. 1117. The Court went on further to establish that in a suit, insofar as it seeks injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm, "the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct," Helling v. McKinney, supra, at 36, 113 S. Ct., at 2482; their attitudes and conduct at the time suit is brought and persisting thereafter. An inmate seeking an injunction on the ground that there is "a contemporary violation of a nature likely to continue," United States v. Oregon State Medical Soc., 343 U.S. 326, 333, 72 S. Ct. 690, 695, 96 L.Ed. 978 (1952), must adequately [511 U.S. 846] plead such a violation; to survive summary judgment, he must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future. In so doing, the inmate may rely, in the district courts' discretion, on developments that postdate the pleadings and pretrial motions, as the defendants may rely on such developments to establish that the inmate is not entitled to an injunction. See Fed. Rule Civ. Proc. 15(d); 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §§ 1504-1510, pp. 177-211 (2d ed. 1990). Farmer v. Brennan, 114 S. Ct. at *1983.

2. The Plaintiff has clearly stated a cause of action for deliberate indifference to a serious medical need, and demonstrates/ establishes that he is entitled to preliminary and prospective injunctive relief.

** First of all, as a preliminary matter, the Plaintiff acknowledges that, according to the Federal Rules Of Civil Procedure, a party has an ongoing obligation to inform the Court and any other party about any relevant information that that party becomes knowledgeable or aware of, after the taking of a deposition, as to any fact or answer given during that deposition which would subsequently render the previously given answer uninformed and inaccurate; and therefore, the Plaintiff hereby informs the Court and the defendant that on August 24, 2005, during the Plaintiff's oral deposition, the Plaintiff's answer regarding his family's medical history (Plaintiff's Oral Deposition, page 21, lines 10-20) was uninformed and inaccurate, and hereby informs the parties that the Plaintiff's immediate family (plaintiff's Mother and plaintiff's next-to-oldest Sister) does indeed have a history of serious high blood pressure (* See attached Document-A), and that since the Plaintiff's oral deposition on August 24, 2005, the Plaintiff has had opportunity to speak with medical staff members concerning high blood pressure, and has learned that high blood pressure adversely effects the heart. **

** Furthermore, as a preliminary matter, the Plaintiff directs this Court's attention to the fact that the Plaintiff submitted his Request For Admission Of Facts to be filed on August 25, 2005, and that the Defendant did not submit her Motion For Enlargement Of Time until September 27, 2005, which is more than thirty (30) day from the date that Plaintiff served his Request For Admission Of Facts, and this is in violation of Federal Rules Of Civil Procedure, Rule 36(a); and although this Court did eventually grant the defendant's Motion For An Enlargement Of Time, the defendant had already defaulted/ violated Rule 36(a) of the Fed. Rules Of Civ. Proc., and therefore, the facts contained in plaintiffs' Request For Admission Of Facts are considered admitted as true by the Defendant, according to Rule 36(a) of the Fed. Rules Of Civ. Procedure. **

The Plaintiff did indeed show, objectively, that he was in fact suffering from a serious medical condition, as any honest and well-learned medical practitioner (medical doctor, registered nurse, etc.), even out in the general population of society, will concede that severe internal chest pains/problems is of serious medical concern, and is not to be taken lightly, just the same as injury/ trauma to a person's head is of serious medical concern and not to be taken lightly, as severe and extreme internal chest pains could quite possibly be indicative of very serious medical implications such as heart attack, stroke, etc. And this fact is further demonstrated by the fact that when a prisoner have complaints of experiencing internal chest pain, it is broadcast/transmitted over the prison institution's radio communication system as a code-three medical emergency (* admitted fact, plaintiffs' Request For Admission Of Facts, fact #1) and is immediately responded thereto by medical staff accordingly; and is further demonstrated by the fact that, on September 24, 2002, the Defendant was to immediately have the Plaintiff taken over to the health care unit to be seen by the doctor, instead of dealing with the situation in the normal manner/procedure of placing the Plaintiff on the list (sick-call) to be seen by the doctor later in the week or other later time. Indeed, one prisoner, at Plaintiff's present place of confinement, not too long ago, has literally died after complaining of chest pain and after a medical staff member (medical technician C. Beasley) was spitefully indifferent to that prisoner's medical need/situation by deliberately procrastinating and delaying in coming over to the cellhouse to provide medical attention/care when called by the security staff.

The Defendant claims that the Plaintiff has had various medical tests performed on him for his chest pains, but this is not true because the Plaintiff has only had a couple (two at the most) of EKGs performed on him, while at his present place of confinement, for his chest pains (* See Disputed Genuine Issue Of Material Fact #1). The Defendant uses the word various as if to say that the

③

Plaintiff has been given **numerous** medical tests for his internal chest pains, when in fact the Plaintiff has only been given two (2) EKGs in response to internal chest pains, but which were performed on the Plaintiff untimely, after the medical technician had initially denied the Plaintiff medical attention, and after Plaintiff's internal chest pains had already subsided. Giving the Plaintiff instruction or advice on what to eat or to slow down on exercise does not constitute medical tests (Plaintiff's Oral Deposition, pp. 11-12).

The Defendant claims that the Plaintiff has not been diagnosed with any heart/chest condition, but this is not certain because neither the Plaintiff nor the Defendant knows exactly what is in the Plaintiff's medical file, or what has been written or diagnosed by doctors or other medical personell in Plaintiff's medical files (*See Disputed Genuine Issue Of Material Fact #2), and the Plaintiff, during his oral deposition, has told the Defendant that "to the best of his (Plaintiff's) Knowledge" he has not been diagnosed as having internal organ problems (plaintiff's Oral Deposition, pp. 13-14). "To my Knowledge" and "to the best of my Knowledge" is not a definate or conclusive answer, and it is quite possible that the Plaintiff could indeed have been diagnosed as having heart/chest/internal organ problems.

The Defendant also claims that the Plaintiff showed no external symptoms of his medical condition on September 29, 2002, the date of the incident in question, but this is belied by the evidence in the record, as the Plaintiff did indeed show/exhibit palpable external signs/symptoms (fearfulness, distress, and had to lie down due to pain and shortness of breath) of his medical condition while the Defendant was at Plaintiff's assigned cell on September 29, 2002 (*See Disputed Genuine Issue Of Material Fact #3). When the Defendant arrived at Plaintiff's assigned cell on September 29, 2002, she (Defendant Torrez) saw the Plaintiff lying down in bed distressed and in pain, and the Plaintiff explains to the Defendant what the problem is, that he's having serious chest pains, that he's hurting (plaintiff's Oral Deposition p. 18, pp. 20-21, p. 26, pp. 30-31). Furthermore, and more significantly, it is clearly evident that the Plaintiff **must** have been showing/exhibiting external, visible signs/symptoms of his medical condition while the Defendant was at his assigned cell on September 29, 2002; otherwise, why would the Defendant feel the need to go and call on the telephone to the doctor on duty to get clearance for the Plaintiff to be brought over to the hospital (Health Care Unit)? (Defendant Torrez's Answer, page 2, numbers 4, 5 and 6, and plaintiff's Oral Deposition, p. 10, lines 2-18). And this is very significant because in her Answer Instanter, Defendant Torrez asserts that the Plaintiff did not explain to her his medical condition, and that she (Defendant Torrez) and the Plaintiff did not engage in any conversation whatsoever concerning Plaintiff's medical condition, and that the Plaintiff did not ask her (Def. Torrez) to see a doctor or to be taken over to the Health Care Unit, and in her Admission Of Facts, she (Def. Torrez) admitted that she did not take any of Plaintiff's vital signs (blood pressure, body temperature, etc.); so if the Plaintiff did not inform/explain to Defendant Torrez about his medical condition (severe internal chest pains) while she was at his assigned cell on September 29, 2002, and if the Plaintiff and the Defendant did not engage in any conversation whatsoever regarding Plaintiff's medical condition, and if the Plaintiff did not ask the Defendant to let him see a doctor or to be taken over to the hospital, and if the Defendant (Torrez) did not take any of the Plaintiff's vital signs, exactly what was it that prompted the Defendant to go and get clearance for the Plaintiff to be taken over to the Health Care Unit, and what was it that made the medical doctor order for the Plaintiff to be brought over to the hospital?? The only logical and reasonable answer to that question is that the Defendant (Torrez) must have evidently seen signs/symptoms of the Plaintiff's medical condition. There is no other justification or reasonable inference which can be drawn for the Defendant's insisting on having the Plaintiff brought over to the hospital, even after the Plaintiff [allegedly] refused to sign a P-96 (money voucher) and was being totally uncooperative.

The issue which the Plaintiff has the burden of proving is whether or not he (Plaintiff) had a serious medical need on the day in question (Sept. 29, 2002); and, according to the Defendant, the one, most significant material question to be answered is whether or not the Plaintiff showed any external, visible signs/symptoms of his medical condition on the date in question (September 29, 2002). A serious medical condition is

one where "... the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Dunigan v. Winnebago County, 165 F.3d 587, 590 (7th Cir. 1999), quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997). The relevant portion here are the words — "... the unnecessary and wanton infliction of pain." According to these seven words, the Plaintiff did indeed have a serious medical condition on September 29, 2002. The Plaintiff was suffering from severe and extreme internal chest pains, and the Defendant's actions (indifference) caused unnecessary and wanton continued infliction of pain, and therefore, the Plaintiff's medical condition on Sept. 29, 2002 was a serious one. The Defendant (Torrez) knew of and disregarded an excessive risk to the Plaintiff's health; the Defendant, on Sept. 29, 2002, was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed (by knowing the actual nature of the Plaintiff's medical condition, and by seeing/observing the Plaintiff's demeanor/state of being and by the Plaintiff telling the Defendant what his (Plaintiff's) medical condition was), and she (Defendant Torrez) also drew the inferences (by going and calling on the telephone and getting clearance/permission for the Plaintiff to be brought over to the hospital, and by acknowledging the medical doctor's order to bring the Plaintiff over to the hospital), Dunigan, at 591 quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Defendant had ample time to remedy the Plaintiff's medical need/condition. All the Defendant had to do was follow through and have the Plaintiff brought over to the hospital as she was ordered to do by the doctor on duty, but instead, for want of a two-dollar co-payment voucher (which was contrary to the department's own procedure policies, anyhow), the Defendant did not allow the Plaintiff any medical care at all, and left the Plaintiff in unnecessary and severe pain. The Defendant is liable in all regards.

A serious medical need has also been identified as "a medical condition which a doctor has prescribed as needing treatment, or one in which even an ordinary lay-person can see the need for medical treatment." And so even by this standard, the Defendant is still liable for being deliberately indifferent to the Plaintiff's serious medical need on Sept. 29, 2002. As discussed above, Defendant Torrez evidently must have seen the need for the Plaintiff's condition to receive some type of medical care or treatment, or she would not have felt compelled to go and get clearance for Plaintiff to be brought over to the Health Care Unit. Also, when the Defendant got on the telephone and consulted with the medical doctor on duty, that doctor diagnosed/prescribed, over the telephone, the Plaintiff's condition as needing medical attention/treatment, and that is why he (the medical doctor on duty) ordered for the Defendant to have the Plaintiff brought over to the hospital. It was the Defendant (Torrez) who took it upon herself to be deliberately indifferent to the Plaintiff's serious medical need, for her own ulterior motive(s). So even under both prongs of this standard the Defendant's actions/inactions are violative of the Plaintiff's Constitutional rights, and the Defendant cannot escape liability.

## Preliminary And Prospective Injunctive Relief

Keep in mind that the violation of Plaintiff's Constitutional rights on September 29, 2002, occurred due to the continuous, ongoing, common institutional practice/policy of the Defendants. On June 27, 2005 the Plaintiff filed in this Court his Plaintiff's Motion For Preliminary Injunction due to "the contemporary violation of a nature likely to continue". The Defendants' attitudes and conduct at the time this suit was brought was one of deliberate indifference, on an ongoing, common, widespread basis, as the Defendants were denying the Plaintiff (and other prisoners alike) necessary medical care because the Plaintiff did not have P-76 forms at the given times; and were fraudulently using/manipulating the two-dollar co-payment policy to charge the Plaintiff money for medical services that he never received; and were "creating" conditions in the prison environment which were hazardous to one's health, in order to get the Plaintiff to pay money for medical attention/care (*See Disputed Genuine Issue Of Material Fact #4).

The Plaintiff hereby incorporates as though fully written herein, all of the facts and incidents and dates contained in Plaintiff's Motion For Preliminary Injunction which was submitted to this Court for filing on June 27, 2005, in order to show/demonstrate the Defendants' attitudes and conduct persisting thereafter this suit was brought (*See Disputed Genuine Issue Of Material Fact #4).

⑤

And to demonstrate that at the time of summary judgement, the Defendants/prison officials are knowingly and unreasonably disregarding an objectively intolerable risk of harm, and their current attitudes and conduct, and that they will continue to do so, and the continuance of that disregard and attitudes and conduct during the remainder of this litigation and into the future, the Plaintiff asserts the following:

On Tuesday night, September 27, 2005, the Plaintiff had an emergency medical situation, where he was having internal chest pains, and medical technician C. Beasley was immediately called over to the cellhouse for Plaintiff's medical condition/situation. Medical technician C. Beasley did **not** provide the Plaintiff with any medical treatment whatsoever, and did **not** provide the Plaintiff with any type of pain-killer or anything else to relieve the pain (*See Disputed Genuine Issue Of Material Fact #4); but yet & still medical technician C. Beasley charged the Plaintiff two-dollars ($2.00) for medical services which was never provided to the Plaintiff, and the Plaintiff has attached hereto a copy of the two-dollar P-76 (money voucher) receipt from which med. tech. C. Beasley charged Plaintiff the two-dollars (attached Document-F); but just disregarded Plaintiff's medical need and left the Plaintiff to suffer the pain.

The Plaintiff has been diagnosed as having a medical condition (foot deformity) in his feet, and has been prescribed to have specific medically prescribed footwear for his medical condition. The Defendants - prison officials has spitefully taken away the Plaintiff's medically prescribed footwear and refuses to give them back, and the plaintiff therefore has to suffer and endure constant, excruciating pain on a daily basis. On a couple of occasions during the month of October 2005, and two times during the month of November 2005 (November 01, 2005 and November 02, 2005) the Plaintiff stopped medical technician J. Birkle and spoke with him concerning Plaintiff's medical condition in his feet and tried to get him (med. tech. J. Birkle) to either get the Plaintiff some replacements medically prescribed footwear or to either give the Plaintiff some type of pain reliever (like Motrin or Tylenol) for the pain of Plaintiff's medical condition, but medical technician J. Birkle refused to provide the Plaintiff with either because the plaintiff did not have any P-76 forms at the time, even after the Plaintiff explained to med. tech. Birkle that the cellhouse staff kept claiming that they didn't have any P-76 forms when the Plaintiff requested for some (*See Disputed Genuine Issue Of Material Fact #4).

On the nights of October 10, 2005, October 11, 2005, October 16, 2005, October 17, 2005, October 18, 2005, October 30, 2005, October 31, 2005 and November 01, 2005, times when the weather was cold outside, sergeant Morrison and officer K. Boase deliberately and spitefully opened up the windows all the way and let cold, freezing air come in on the Plaintiff (and the other inmates in the area) all night long, knowing that the heating system was **not** active, and refusing to provide Plaintiff with blanket or other adequate shelter or protection from the weather, intentionally so that the Plaintiff (and other prisoners similarly situated) could get sick/ill with a bad cold or the flu and **have to** pay them money for medical attention/treatment (*See Disputed Genuine Issue Of Material Fact #4).

The violative ongoing, continuous, common prison practice/policy, the Defendants'- prison officials' attitudes and conduct, and their continuous disregard of an objectively intolerable risk of harm, is showing no tendency to change whatsoever, and definately will continue to go on and on throughout the remainder of this litigation and into the future (*See Disputed Genuine Issue Of Material Fact #4).

The Plaintiff has indeed stated a cause of action for deliberate indifference to his serious medical need by the Defendant, and has hereby shown that there are genuine issues of material facts left to be decided at trial, and that the defendants' motion for summary judgement should be denied.

Wherefore, for all of the above and foregoing reasons, the Plaintiff respectfully requests this Court to deny the Defendant's motion for summary judgement.

Sincerely & Respectfully Submitted,
Joseph Clark
Plaintiff, pro se

Joseph Clark
#K57170, North House-121
700 West Lincoln Street
P.O. Box-99
Pontiac, Illinois 61764-099

⑥

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, _Joseph Clark_, affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing documents are known to me and are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this _01st_ day of _November_, 200_5_.

_Joseph Clark_
Affiant

I, _Joseph Clark_, the undersigned, do swear that my immediate family members (my Mother and my next-to-oldest sister) have a history of serious high blood pressure and related illnesses; and I swear that the facts contained herein are true and correct in substance and in fact.

_J. Clark_
Affiant

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, _____Joseph Clark_____, affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing documents are known to me and are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this __01st__ day of __November__, 2005.

_____Joseph Clark_____
Affiant

I, __Joseph Clark__, the undersigned, do swear that I have only had a couple (two at the most) of EKGs performed on me while at my present place of confinement (Pontiac Correctional Center), for my chest pains; and that I have not had various medical tests performed on me for my chest pains; and that said tests which were performed on me were performed only after I had already been initially denied medical care and after my pains had already subsided; and I swear that the factual content contained herein is true and correct in substance and in fact.

_____J. Clark_____
Affiant

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, _Joseph Clark_, affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing documents are known to me and are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this _01st_ day of _November_, 200_5_.

_Joseph Clark_
**Affiant**

I, _Joseph Clark_, the undersigned, do swear that it is not positively known for sure by neither myself nor the Defendant (Josephina Torrez) whether or not I have been diagnosed by a doctor as having a heart/chest/internal organ condition; and I swear that during my Oral Deposition I told the Defendant's attorney that "to the best of my knowledge I haven't been diagnosed;" and I swear that the factual content contained herein is true and correct in substance and in fact.

_Jo. Clark_
Affiant

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, _Joseph Clark_, affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing documents are known to me and are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this _01st_ day of _November_, 200_5_.

_____ _Joseph Clark_
                                                Affiant

I, _Joseph Clark_, the undersigned, do swear that when Defendant Josephina Torrez was at my assigned cell on September 29, 2002, she (Josephina Torrez) saw me lying down in bed distressed and in pain; and that I did indeed show/exhibit external, visible signs/symptoms of my medical condition (severe internal chest pains) such as fearfulness, distress, lightheadedness, shortness of breath, etc.; and that I clearly explained to Josephina Torrez what my medical condition was, and that I was having serious chest pains; and that Defendant Josephina Torrez did in fact acknowledge and "register" in her mind what I explained to her about my medical situation/condition, and my need for medical care; and I swear that the factual content contained herein is true and correct in substance and in fact.

_____ _J. Clark_
                                                Affiant

# AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, __Joseph Clark__, affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing documents are known to me and are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this __01st__ day of __November__, 200__5__.

__Joseph Clark__
Affiant

I, __Joseph Clark__, the undersigned, do swear that the Defendants'- prison officials' attitudes and conduct at the time this attached suit (Joseph Clark v. Josephina Torrez, Case No. 04-1012) was filed was of deliberate indifference on an ongoing, continuous, common, widespread basis, as the Defendants were denying the Plaintiff necessary medical care because the Plaintiff did not have P-96 forms at the given times, and were fraudulently using the two-dollar co-payment policy to charge the Plaintiff money for medical services that I never received, and were "creating" health-hazardous conditions in the environment in order to get me to pay money for medical attention/care; and that all of the facts and incidents and dates incorporated in the attached Response, which is contained in Plaintiff's Motion For Preliminary Injunction, are true and accurate accounts of the Defendants'- prison officials' attitudes and conduct; and that on Tuesday night, September 27, 2005, I had an emergency medical situation whereas I was having internal chest pains, and that medical technician C. Beasley charged me two-dollars but did not provide me with any medical care at all, no pain relievers or anything, and she (med. tech. C. Beasley) disregarded my medical need and left me to endure and suffer the pain; and that I have been diagnosed as having a medical condition (foot deformity) in my feet, and has been prescribed by doctors to have specific medically prescribed footwear for my medical condition, but that the prison officials took my medically prescribed footwear away from me, and that during the months of October 2005 and November 2005, I tried to get medical technician J. Birkle to get me some replacements for my medical footwear or to either give me pain-killers for the excruciating pain that I experience on a daily basis, but he (med. tech. J. Birkle) refused to provide me with either, because I did not have any P-96 forms at the time; and that on 10/10/05, 10/11/05, 10/16/05, 10/17/05, 10/18/05, 10/30/05, 10/31/05 and 11/01/05, when it was cold outside, sergeant Morrisson and officer K. Boase deliberately and spitefully opened up the windows all the way, letting cold, freezing air in on me all night long, knowing that the institutional heating system was not active/on, and not providing me with blanket or other adequate shelter or protection from the weather; and that the Defendants'- prison officials' ongoing violative institutional policy, their attitudes and conduct, their continuous disregard of an objectively intolerable risk of harm, is not showing any tendency to change at all, and definately will continue to go on and on throughout the remainder of the attached litigation and into the future; and I swear the all of the factual content contained herein is true and correct in substance and in fact.

__J. Clark__
Affiant

**REQUEST FOR PAYMENT**

STATE OF ILLINOIS
DEPARTMENT OF CORRECTIONS

Date: 9-27-05

Name (print): Clark    I.D. No.: K57170    Housing Unit: N121

Please pay to: IDOC

Address: _____

City: _____ State: _____ Zip: _____

The sum of $2 dollars and ___ cents

and charge to my account, for medical request protocol

☐ APPROVED    _Clark_ K57170
☐ NOT APPROVED    Inmate Signature    ID No.

_[signature]_    _[signature]_
Assistant Warden/Superintendent/Designee    Witness

**REQUEST FOR PAYMENT OF POSTAGE**

I hereby request and authorize payment of postage for the attached mail.

_____
Inmate Signature

ID No. _____

**FOR TRUST FUND USE ONLY**

Trust Fund Balance    $ _____
Less amount of payment    $ _____
Current balance after payment    $ _____

Check No. _____ Date 9-30-05
443986
Business Office

**FOR JUVENILE DIVISION USE ONLY**

Received by: _____ (Staff) _____ Date
Received by: _____ (Youth) _____ Date

**REQUEST FOR PAYMENT OF POSTAGE**

Postage requested in the amount of _____ dollars _____ cents
☐ Postage Paid

DC 828 (09/91)    IL 428-0207

Document - F

IN THE

United States District Court For

The Central District Of Illinois

Joseph Clark, )
Plaintiff/Petitioner, )
)
vs. )  Case No. 04-1012
)
Josephina Torrez, )
Defendant/Respondent. )

---

PROOF/CERTIFICATE OF SERVICE

TO: John M. Waters, Clerk
Clerk Of The United States District Court
Central District Of Illinois, Peoria Division
Office Of The Clerk, Room 309
Federal Building, 100 N.E. Monroe Street
Peoria, Illinois 61602
(the original and two(2) copies sent)

TO: John J. Weathers
Assistant Attorney General, 500 South Second Street
Springfield, Illinois 62706
(one(1) copy sent)

PLEASE TAKE NOTICE that on November 04, 2005, I placed the documents listed below in the institutional mail at Pontiac Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service: my Cover Letter to the Clerk of the Court; my Plaintiff's Response To Defendant's Motion For Summary Judgment, with attached related Documents - A through F; and this attached related Proof Of Service.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109 I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge and belief.

DATED: November 01, 2005

/s/ Joseph Clark
NAME: Joseph Clark
IDOC No. #K57170
Pontiac Correctional Ctr.
POB - 99
Pontiac, IL. 61764